[Civ. No. 19249.   Second Dist., Div. One.   Mar. 2, 1953.]

MARTHA KUIST, Appellant, v. MYRTLE SYLVIA CURRAN et al., Respondents.

Manasse & Crowley and Arthur J. Crowley for Appellant.

C. F. Jorz and John G. Zelezny for Respondents.

PATROSSO, J. pro tem.—In this action for personal injuries, plaintiff appeals from a judgment in favor of the defendants entered upon the verdict of the jury.

The accident in question occurred near the southeast corner of the intersection of Fletcher and Riverside Drives in the city of Los Angeles, at or about 4 o'clock in the afternoon. The former runs in a general northerly and southerly direction and the latter in a general easterly and westerly direction. Appellant is a newspaper vendor, and at about 4 o'clock on the day in question was standing in the middle of Fletcher Drive approximately 65 feet south of the southerly line of Riverside Drive. There is a gasoline station located on the southeast corner of the intersection with a driveway to Fletcher Drive approximately opposite from where the appellant was standing. The defendant Myrtle Curran (hereinafter referred to as the respondent) had driven into this service station for the purpose of inquiring the directions to the home of a friend whom she intended to visit. When leaving the service station, respondent stopped in the driveway to permit the passage of traffic on Fletcher Drive, and then proceeded into the street with the intention of making a left turn for the purpose of driving southerly on Fletcher. At this point Fletcher Drive is a six-lane highway with a dividing line in the center. The respondent testified that while stopped in the driveway preparatory to entering Fletcher she observed the appellant standing facing south with her back to respondent in a position a foot or so east of the double white center line of Fletcher. Respondent proceeded to leave the driveway at a speed of from 2 to 5 miles per hour, driving in the general direction of where appellant was standing. Respondent testified that she intended to pass behind or to the north of appellant, and that when her car was in the im-

mediate vicinity of the appellant the latter took one step backward and turned to her right, moving a distance variously stated of from 18 to 20 inches and from 3½ to 4 feet when the accident occurred.[1] Respondent admits that she gave no warning of her approach by sounding her horn or otherwise, and the only inference to be drawn from her testimony is that appellant was at all times oblivious to the fact that respondent's car was approaching her and likewise that this fact was at all times apparent to the respondent.

Primarily, appellant complains of the action of the trial court in giving and refusing certain instructions.

Appellant requested and the court refused to give the following instruction: "You are instructed that the plaintiff and the defendant were both chargeable only with the exercise of ordinary care, but a greater amount of such care was required of the defendant at the time of the accident in question by reason of the fact that she was operating and driving an automobile, which is an instrument capable of inflicting serious and often fatal injuries upon others using the highway."

Instructions in substantially similar language have received judicial approval. (*Weihe* v. *Rathejen Mercantile Co.*, 34 Cal.App. 302, 305 [167 P. 287], hearing by Supreme Court was denied; *Vedder* v. *Bireley*, 92 Cal.App. 52, 58 [267 P. 724]; *Pinello* v. *Taylor*, 128 Cal.App. 508, 514 [17 P.2d 1039], hearing by Supreme Court denied; *Brown* v. *Blair*, 26 Cal.App. 2d 613, 614 [80 P.2d 95]; *Martin* v. *Vierra*, 34 Cal.App.2d 86, 93 [93 P.2d 261], hearing by Supreme Court denied; *Geisler* v. *Rugh*, 19 Cal.App.2d 738, 742 [66 P.2d 671], hearing by Supreme Court denied; *Dawson* v. *Lalanne*, 22 Cal. App.2d 314 [70 P.2d 1002].) In the last cited case it was

---

[1]Respondent testified as follows:

"Q. How far would you estimate Mrs. Kuist stepped backward? A. There, again, this length I indicated was what I meant she stepped backwards.

"Q. Could it be 18 or 20 inches she stepped backwards? A. Whatever something like that would be.

"THE COURT: Approximately 3½ or 4 feet. A. Thereabouts.

"Q. Remember when your deposition was taken? A. Yes, I do.

"Q. Directing your attention to this language (in the deposition):

" 'Q. She stepped backward and swung to her right? A. Yes, toward my car.

" 'Q. Toward your car. How far did she swing toward your car? A. Well, I would judge probably, oh, something like that, 18 or 20 inches.'

"Was that your testimony at the time the deposition was taken? A. That is right.

"Q. So that Mrs. Kuist did not move more than 20 inches from the time you first saw her until the time you struck her? A. As I said in giving the deposition, probably 18 or 20 inches; I was a poor judge."

held that failure to give such an instruction alone constituted reversible error, while in *Vedder* v. *Bireley*, and *Pinello* v. *Taylor, supra,* it was held that the failure to give such an instruction coupled with other errors in the instructions required a reversal. However, in *Warnke* v. *Griffith Co.,* 133 Cal.App. 481, 496 [24 P.2d 583] (hearing by Supreme Court denied) it was held that it was not error to refuse "a very long instruction" which contained language somewhat similar to that of the instruction requested and refused here. There, however, the instruction differed from that requested here in that it referred to a motor vehicle as "a dangerous instrumentality" and it may be noted also that the court seemingly approved as a correct statement of law the principle expressed in the requested instruction here, for at page 497 it is said: "(W)hile it is undoubtedly true that the amount of care required of the driver of the truck was greater than that required of appellant as set forth in the part of the instruction refused by the court, and while such instruction sets forth a correct principle of law, we are of the opinion that the charges given by the court are equally sound as principles of law."

In *De Victoria* v. *Erickson,* 83 Cal.App.2d 206 [188 P.2d 276], the court affirmed an order granting plaintiff a new trial in which one of the errors of law assigned was the failure of the trial court to give a substantially identical instruction. In the course of its opinion, however, the court indicates that the propriety of giving or refusing such an instruction is to be determined in the light of the facts in each particular case. With this as a predicate, respondent asserts that the line of demarcation is "whether the pedestrian in question is traversing the street at a place where he has a greater right to cross, such as at an intersection, in a marked or unmarked crosswalk, or to or from a safety island in contradistinction to crossing elsewhere on the highway." True additional considerations may be applicable with respect to pedestrians crossing a street at a point other than an intersection or marked crosswalk, such as the duty of the pedestrian to yield the right of way, but we find nothing in the cases cited which have considered the propriety of such an instruction which suggests that the legal principle embodied therein is confined to those cases where the pedestrian is injured in a portion of the highway where he may be said to have some superior right to be. (See *Raymond* v. *Hill,* 168 Cal. 473, 483 [143 P. 743].) Here as in *Dawson* v. *Lalanne, supra,* the jury

were instructed that it was "the duty of every person using a public highway whether a pedestrian or the driver or operator of any kind of vehicle, to exercise ordinary care at all times to avoid placing himself or others in danger and to avoid a collision" and the authorities cited would seem to require an amplification of this statement in order that the jury may be made to understand that, although the degree of care required of each party is the same, the amount or quantum is greater in the case of the driver of a motor vehicle. However, were this the only error in the case we would have considerable hesitancy in reversing the judgment by reason thereof, but it is to be considered in connection with the other assignments of error.

Appellant next complains of the giving of an instruction containing the language of subdivisions "a" and "b" of section 562 of the Vehicle Code requiring a pedestrian crossing a roadway at any point other than within a marked crosswalk or within an unmarked crosswalk at an intersection to yield the right of way to all vehicles upon the roadway. The basis of appellant's contention is that there is no evidence that the appellant at the time of the accident was in the act of crossing the roadway, and with this contention we are constrained to agree. In undertaking to justify the giving of this instruction counsel for respondent assert: "Viewing the evidence in the light most favorable to the respondent and indulging in all reasonable inferences which favor sustaining the trier of fact, we find that a pedestrian on the opposite side of the street had signalled to the plaintiff for a paper; that it was plaintiff"s intention to cross the street to sell the pedestrian a newspaper; that she had suddenly, and without warning, whirled *and moved about three feet in starting across the highway.*" No transcript references are given in support of the foregoing, and a careful examination of the record fails to disclose any evidence supporting the statement that appellant "moved three feet in starting across the highway."

Appellant testified that immediately prior to the accident she observed a pedestrian walking northerly on the sidewalk on the westerly side of Fletcher, and thinking he might be a prospective customer she turned to face west to watch his progress; that as he approached a point approximately opposite her he signalled that he desired to purchase a paper, and that she was about to look to the north to see if there was any southbound traffic when she was struck. She testi-

fied that the only change from her previous position was to shift her feet so that she was facing in a westerly direction instead of a southerly direction as previously, and positively denied that she started to cross the street at any time prior to the time she was struck by respondent's automobile. Respondent testified that from the time she first observed appellant she was facing south and that immediately before the impact the appellant "swung to her right and stepped backward toward respondent's car" (either northerly or easterly, depending upon whether or not appellant was then facing south or west). But there is no suggestion in respondent's testimony that appellant at any time moved in a westerly direction toward the west side of Fletcher. The only other witness who testified upon the trial was a passenger in respondent's automobile. Her testimony was to the effect that as respondent's car was in the driveway of the service station proceeding into Fletcher Drive she observed the appellant standing near the double line on Fletcher facing south and that when respondent's car was within four feet of the appellant the latter made a complete turn so as to face *north* and took a step and collided with respondent's car. This witness also testified that after the accident the appellant was on both of her knees a foot or two *east* of the double white line on Fletcher Drive.

We see nothing in the foregoing testimony to even suggest that at the time of or immediately prior to the accident appellant was crossing Fletcher Drive from east to west. The most that can be said is that she intended to do so but before she could carry out her intention in this respect she was struck by respondent's automobile. In the circumstances the giving of the instruction was improper, and may well have misled the jury to the appellant's prejudice, particularly in view of the fact that this instruction was followed by one in the language of BAJI 150 to the effect that the failure to yield to one to whom the law has given the right of way is negligence unless circumstances resulting from causes beyond the control of the driver or pedestrian are such as to excuse and justify him in such failure.

Appellant also complains of the giving of an instruction upon the subject of imminent peril (BAJI 137). There is no contention that this instruction is not a correct statement of the law, but appellant asserts that it was improper to give the same because (1) the evidence compels the conclusion that the respondent was negligent, and (2) she was

not "suddenly and unexpectedly confronted with peril." While the evidence speaks rather eloquently of negligence upon the part of the respondent, we are not prepared to say that it must be held that it established negligence upon her part as a matter of law. ▮ However, we agree that the giving of this instruction was improper for the second reason assigned by appellant. Respondent's own testimony, as well as that of her witness, makes manifest that she was not confronted by a *sudden and unexpected peril*. ▮ Certainly one who knowingly drives in the direction of a pedestrian standing in the street, and being aware that the pedestrian is oblivious to the approach of the vehicle, can hardly be heard to say that she was confronted by an unexpected peril by reason of the fact that the pedestrian changed her position by taking one step when the vehicle was within 4 feet of her. Indeed, in such a situation a driver would readily expect the possibility of such an occurrence. To say that the movement of appellant here was unexpected is tantamount to saying that if respondent had driven directly toward appellant she (respondent) was confronted by an unexpected peril by reason of appellant's failure to move out of the path of the automobile.

In *Dougherty* v. *Ellingson*, 97 Cal.App. 87, 96 [275 P. 456], the court says:

"Appellants Ellingson assigned as error the court's refusal of their proposed instruction as to the duty of a driver when suddenly confronted with danger. The testimony of Edward Ellingson, above set forth, shows that he saw the other automobile in ample time to have prevented the collision and was not suddenly confronted with peril."

In *Fraser* v. *Stellinger*, 52 Cal.App.2d 564, 567 [126 P.2d 653], the court says:

"The trial court refused the request (instruction on sudden emergency) 'because the driver (Stellinger) had had the rider (plaintiff) in view for 1000 feet as shown by his own testimony.' The ruling was not erroneous."

The case last cited in its facts is strikingly similar to that here. There the defendant was driving a truck and first saw the plaintiff who was riding a bicycle when the latter was approximately 1,000 feet ahead of him. The defendant continued to drive forward and when about 50 feet behind the plaintiff he sounded his horn. The plaintiff did not indicate that he heard the horn and he testified that he did not. The defendant continued forward "and when he was 2, 3, 4 or 5

feet to the rear of the bicycle he (defendant) testified that plaintiff swerved the bicycle across the path of the truck.'' Here, as we have seen, respondent saw the appellant in the middle of the street from the time she started to leave the service station, observed that appellant, who had her back turned toward respondent, was unaware of the approach of the latter's automobile, and nonetheless continued forward toward the appellant without warning until she was within a distance of not more than 4 feet from her, when she says appellant took one step and came into contact with the automobile.

■ As said in 65 Corpus Juris Secundum 411: ''A mere necessity for quick action does not constitute an emergency within the rule where the situation or the danger calling for such action is one which should reasonably have been anticipated and which the person charged with negligence should have been prepared to meet.'' Such we believe was clearly the situation here.

■ We do not agree with appellant's further contention that the evidence establishes as a matter of law that appellant was not guilty of any negligence that proximately contributed to the accident. This issue was properly submitted to the jury.

■ Neither are we prepared to accept appellant's contention that the trial court should have instructed the jury *as a matter of law* that, even though negligent, appellant was entitled to recover by virtue of the doctrine of the last clear chance. The trial court correctly instructed the jury with respect to this doctrine, and under the evidence it was for the jury to determine whether or not it should be applied.

In the light of the evidence we have concluded that the error in refusing appellant's requested instruction previously adverted to and in giving the instructions embodying the provisions of section 562 of the Vehicle Code and the doctrine of imminent peril, requires a reversal of the judgment appealed from. As previously indicated, respondent's own testimony strongly suggests if it does not affirmatively establish that she was negligent. Under the circumstances we cannot say that the jury would not have reached a different result but for the errors in the instructions previously mentioned.

The judgment is reversed and the cause remanded for a new trial.

Drapeau, J., concurred.

Doran, Acting P. J., dissented.